UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-01584-SEB-MKK |
| | ) | |
| $299,745.00 IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| JOSE MANUEL GARCIA, JR., | ) | |
| | ) | |
| Claimant. | ) | |

## ORDER DENYING CLAIMANT'S MOTION TO DISMISS

This matter is before the Court on Claimant Jose Manuel Garcia, Jr.'s ("Mr. Garcia")

Motion to Dismiss for failure to state claim upon which relief may be granted, pursuant to

Federal Rule of Civil Procedure 12(b)(6). Dkt. 10. Plaintiff United States of America (the

"Government") initiated this action, seeking forfeiture of Defendant $299,745.00 in United

States Currency (the "Currency"). For the reasons explained below, Mr. Garcia's motion is

**DENIED**.

## FACTUAL BACKGROUND

As is required on a motion to dismiss, we accept as true the factual allegations in

the Complaint, drawing all inferences in favor of the Government, the non-moving party.

*Bielanksi v. Cnty of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

1

On April 26, 2023, while patrolling Interstate 70's westbound traffic, Indiana State Police ("ISP") Trooper Adam Buchta ("Trooper Buchta") stopped a 2021 GMC pick-up truck for following a semi-truck too closely. During the traffic stop, the pick-up truck's driver and sole occupant presented a Texas Operator's License identifying himself as Jose Manuel Garcia, Jr. from Pharr, Texas. Mr. Garcia also provided a Budget Rent A Car rental agreement (the "Agreement"), according to which Mr. Garcia had leased the truck the day before, on April 25, 2023, at 10:29 p.m. in Cleveland, Ohio. The Agreement also stated that Mr. Garcia planned to return the rental vehicle in Indianapolis, Indiana, at 10:30 p.m. on April 27, 2023.

According to Trooper Buchta, Mr. Garcia was noticeably physically shaking and avoiding eye contact. Mr. Garcia explained that he was traveling from Pharr, Texas, to Indianapolis, Indiana, to visit family and had opted to fly from Pharr to Cleveland, stay overnight at a Cleveland motel, and rent a large pick-up truck to drive to Indianapolis— apparently because that route was less expensive than taking a direct flight from Pharr to Indianapolis. Mr. Garcia also told Trooper Buchta that he planned to return home on "Thursday" (the following day), but had not yet purchased a plane ticket, and that he was currently unemployed. During this conversation, Trooper Buchta observed two duffle bags located inside the pick-up truck.

Suspicious that Mr. Garcia might potentially be involved in interstate drug trafficking, Trooper Buchta summoned ISP K-9 Trooper Christopher Waltz ("Trooper Waltz") to come to the location of the traffic stop bringing with him a certified narcotics canine who could perform an open-air sniff around the truck. Meanwhile, Trooper Buchta informed

Mr. Garcia that he would issue a warning ticket and asked Mr. Garcia whether "he had ever been in trouble before," to which Mr. Garcia responded affirmatively, explaining "that it was because of money."[1] Compl. ¶ 10, dkt. 1.

When Trooper Waltz arrived, his certified narcotics detection canine, K-9 Cole, performed an open-air sniff around the pick-up truck and gave a positive indication for the odor of a controlled substance near the front driver's side door, at which point Mr. Garcia confirmed that there was money inside the truck. Troopers Buchta and Waltz searched the pick-up truck and discovered a gym bag on the floor behind the driver's seat. Inside the gym bag were three heat-sealed packages of cash (totaling in $299,745.00), bundled by denomination and marked with a single playing card. The Government maintains that "[t]he money was not removed from the truck at th[is] time." Gov't Resp. Br. 2, dkt. 11. Instead, Trooper Buchta requested the assistance of the Drug Enforcement Agency ("DEA") for further investigation. Meanwhile, Mr. Garcia was read his *Miranda* rights by the State Troopers and declined to answer any questions, though he did confirm that the money that was in the truck belonged to him.

Shortly thereafter, DEA Special Agent Erik Collins ("SA Collins") and DEA Task Force Officer Shane Melton ("TFO Melton") arrived. SA Collins searched the gym bag

---

[1] The Government avers, and public records confirm, that, in 2018, Mr. Garcia was a passenger in a semi tractor-trailer truck that was stopped in Indiana on Interstate 65 for a traffic violation. Law enforcement located a brief case containing $80,250.00 in United States Currency, of which Mr. Garcia claimed ownership. Law enforcement also found a receipt belonging to Mr. Garcia from a Las Vegas, Nevada, marijuana dispensary. After a narcotics canine gave a positive alert for narcotic odor on the semi, the cash was seized. The matter was ultimately resolved by a court order granting the parties' stipulation and agreement to judgment. *United States v. $80,250.00 in United States Currency*, No. 4:18-cv-214-RLY-DML, Dkt. 12 (S.D. Ind. Feb. 27, 2019) (order of forfeiture).

while it remained inside the pick-up truck and located the Currency; he also located three cell phones and checked Mr. Garcia's cell phone GPS to discover that his destination had been set miles away from the location where Mr. Garcia had previously told the state police that his family lived.

Based on his belief that the Currency was subject to seizure for violations of federal and state controlled substance laws, SA Collins "personally informed [Mr. Garcia] that he was taking possession of the [C]urrency and had the money removed from the truck." *Id.* at 3. K-9 Cole performed an open-air sniff of the Currency and gave positive indication of narcotics odor. Accordingly, SA Collins and TFO Melton transported the Currency as well as three of Mr. Garcia's cell phones to the DEA Indianapolis Office. Mr. Garcia was issued a warning ticket and was released at the scene.

On September 5, 2023, the Government filed this federal forfeiture complaint against Defendant Currency, alleging that it comprises "moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance," "proceeds traceable to such an exchange," and/or "moneys . . . used or intended to be used to facilitate any violations of the Controlled Substance Act." 21 U.S.C. §§ 841(a)(1), 881(a)(6). The Government seeks forfeiture of the Currency, as provided by 18 U.S.C. § 981(a)(1)(A), and on September 6, 2023, the Court issued a warrant, pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

On September 7, 2023, Mr. Garcia filed a Notice of Claim, asserting an interest in the Currency and contesting the forfeiture. On September 24, 2023, Mr. Garcia moved to

dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), which motion is fully briefed and ripe for ruling.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim meets the facial plausibility threshold "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a motion to dismiss, courts must construe "all well-pleaded allegations of the complaint as true and view[ ] them in the light most favorable to the plaintiff." *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th. Cir. 2002).

Civil forfeiture complaints, like the one before us here, must also satisfy the heightened pleading requirements prescribed in Federal Rule of Civil Procedure Supplemental Rule G, according to which the complaint must: be verified; state the grounds for jurisdiction and venue; describe the property with reasonable particularity and (if the property is tangible) state its location at the time it was seized and at the time the complaint was filed; identify the statute under which the forfeiture action is brought; and state sufficiently detailed facts to support a reasonable belief that the government is capable of meeting its burden of proof at trial. *United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 641 (7th Cir. 2015) (citing Fed. R. Civ. P. Suppl. R. G). While a claimant may move to

dismiss a civil forfeiture action under Rule 12(b), "the complaint may not be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." Fed. R. Civ. P. Suppl. R. G(8)(b)(ii).

## DISCUSSION

Mr. Garcia contends in his motion to dismiss that the Government's Complaint is legally insufficient for two reasons: First, he argues, this Court lacks jurisdiction over the *res* because federal authorities never obtained a turnover order from state court, as required under Indiana law.[2] Second, he contends, at the time of the filing of the Complaint, the Government failed to demonstrate probable cause that the Currency was subject to forfeiture.

Before addressing Mr. Garcia's arguments, "we must clarify what is properly before us and what is not." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). A motion to dismiss under Rule 12(b)(6) tests only the legal sufficiency of a complaint, which may (or may not) include the court's consideration of exhibits attached thereto or referenced therein as well as information subject to judicial notice. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). *See also* Fed. R. Civ. P. 10(c). When the moving party attaches extraneous exhibits to a motion to dismiss, "the court must either convert the 12(b)(6)

---

[2] The Government has asserted that Mr. Garcia is precluded from challenging jurisdiction because, prior to the filing of the instant Complaint, he submitted a Notice of Claim to the DEA, according to which he "request[ed] the matter be filed in and reviewed by the United States District Court." Dkt. 11-5 at 2. The Government has not, however, provided any legal authority to support this position, and we, therefore, do not address it further. *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by any legal authority.").

motion into a motion for summary judgment under Rule 56 and proceed in accordance with the latter rule, or exclude the documents attached to the motion to dismiss and continue under Rule 12." *Levenstein*, 164 F.3d at 347; *e.g.*, *United States v. $183,026.36 in U.S. Currency*, No. 2:13-CV-344-TLS-JEM, 2014 WL 3734172, at *2 (N.D. Ind. July 29, 2014) (converting Rule 12(b)(6) motion to summary judgment motion). Although "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are *central* to [its] claim, this is a narrow exception aimed at cases interpreting, for example, a contract." *Levenstein*, 164 F.3d at 347 (emphasis in original) (internal quotation and citation omitted). This exception "is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Id.*

By contrast, a "party opposing a motion under Rule 12(b)(6) has much more latitude than the moving party, for example, to illustrate for the court the facts the party hopes to prove to support the allegations in the complaint." *Roe v. Bridgestone Corp.*, 492 F. Supp. 2d 988, 1007 (S.D. Ind. 2007). "Such documents are not evidence, but they provide a way for a plaintiff to show a court that there is likely to be some evidentiary weight behind the pleadings the court must evaluate." *Id.* Indeed, plaintiffs need not include all the essential facts in the complaint but, instead, "may add them by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint." *Help At Home, Inc. v. Med. Cap., L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001).

Here, Mr. Garcia has attached a host of documents to his motion to dismiss and reply brief: a Property Record and Receipt, dkt. 10-2, an affidavit (recounting his version of the

traffic stop), dkt. 10-2, the warning ticket, dkt. 15-1, a court filing from an unrelated 2008 case, dkt. 15-2, and a Notice of Seizure, dkt. 15-3. The Property Record and Receipt, Mr. Garcia's affidavit, and the Notice of Seizure were neither referenced in nor attached to the Complaint; thus, they do not comprise the pleadings subject to review on a Rule 12(b)(6) motion. The warning ticket, though mentioned in the Complaint, is not central to the Government's claims and likewise does not warrant our consideration at this stage. We may, however, take judicial notice of the 2008 court filing as a matter of public record. *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997) (stating that district courts may take judicial notice of matters of public record on a motion to dismiss).

In its responsive brief, the Government has also submitted "a raft of other documents," *Levenstein*, 164 F.3d at 347, including the car rental receipt, dkt. 11-1, the Cleveland motel receipt, dkt. 11-2, Trooper Buchta's affidavit, dkt. 11-3, SA Collins's affidavit, dkt. 11-4, and a Notice of Claim, dkt. 11-5. As explained above, the Government, as the non-moving party, retains the leeway to elaborate on factual allegations in response to a motion to dismiss. Because the Government's exhibits are consistent with its pleadings, we consider them solely as they pertain to the Complaint's legal sufficiency. *Geinosky*, 675 F.3d at 746 n.1.

Resolving Mr. Garcia's motion to dismiss—which, again, tests only the Complaint's legal sufficiency, *not* its factual veracity—does not compel our consideration of superfluous attachments. *E.g.*, *Barker v. Kapsch Trafficcom USA, Inc.*, No. 1:19-cv-00987-TWP-MJD, 2020 WL 2832092, at *6 (S.D. Ind. June 1, 2020) (explaining that "because Rule

12(b)(6) assesses the sufficiency of the complaint, it would be a legal error to consider an affidavit filed by a defendant that contradicts the complaint's allegations"); *Liqui-Box Corp. v. Scholle IPN Corp.*, 449 F. Supp. 3d 790, 803 (N.D. Ill. 2020) ("Resolving factual disputes is not appropriate at the motion to dismiss stage."). While the parties may not share identical versions of the facts, our task at this juncture is not to entertain competing narratives: as directed by Rule 12(b)(6), we evaluate the Complaint's factual allegations as pleaded. Other than the 2008 court filing, we have not considered the remaining attachments, as they present matters outside the pleadings and, to that end, have no bearing on the Complaint's legal sufficiency.

Having thus addressed the relevant materials, we turn to Mr. Garcia's arguments below.

## I.    *In Rem* Jurisdiction

Civil forfeiture actions are *in rem* proceedings "governed by the longstanding rule that when state and federal courts each proceed against the same *res*, the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." *United States v. $84,940 U.S. Currency*, 86 F. App'x 978, 982 (7th Cir. 2004). Courts abide by this principle "to avoid unseemly and disastrous conflicts in the administration of our dual judicial system and to protect the judicial processes of the court first assuming jurisdiction." *United States v. $79,123.49 in U.S. Cash & Currency*, 830 F.2d 94, 96 (7th Cir. 1987) (internal citation omitted). Thus, if "a state court has assumed jurisdiction over a *res*, a federal court cannot assert jurisdiction over the same *res* until it has

been transferred pursuant to state statute or by a turnover order from the state court." *$84,940 U.S. Currency*, 86 F. App'x at 982.

Mr. Garcia's claim rests in large part on the requirements of state law regarding seizures of property. Though we do not find state law applicable, we shall outline those requirements for purposes of completeness of our analysis. Indiana Code §§ 35-33-5-5 and 34-24-1 outline the requirements for seizing property and instigating forfeiture proceedings. Initially, seized property "is considered to be in the custody of the law enforcement agency making the seizure." I.C. § 34-24-1-2(l). "All items of property seized by any law enforcement agency as a result of a . . . warrantless search[ ] shall be securely held by the law enforcement agency under the order of the court trying the cause." *Id.* § 35-33-5-5(a). Thereafter, "[u]pon motion of the prosecuting attorney, the court shall order property seized . . . transferred . . . to the appropriate federal authority for disposition" under federal law. *Id.* § 35-33-5-5(k).

In other words, once *in rem* jurisdiction has vested in state court, there can be no federal *in rem* jurisdiction unless and until the state court has issued a turnover order sanctioning federal authorities' adoption of the seizure. *Martin v. Indiana State Police*, 537 F. Supp. 2d 974, 987 (S.D. Ind. 2008). "Without a turnover order, 'there [is] no valid transfer of jurisdiction from the state court' " to federal court, thereby depriving the federal court of authority over any forfeiture proceedings. *United States v. $99,000 U.S. Currency*, No. 1:10-cv-138-SEB-DKL, 2011 WL 2470665, at *3 (S.D. Ind. June 17, 2011) (alterations in original) (quoting *Martin*, 537 F. Supp. 2d at 987).

Here, Mr. Garcia contends that this Court lacks jurisdiction because the DEA never obtained (or even requested) a state turnover order before "claim[ing] the money from the state troopers." Mot. Dismiss 5, dkt. 10. He argues that the Complaint is problematically "ambiguous" about which law enforcement agency "initially seized the currency"; however, as he spins the facts, "[t]here can be little dispute that this currency was initially seized by state police officers." *Id.* at 4, 6. Therefore, he concludes, without a state turnover order authorizing the Currency's transfer from state to federal authorities, this Court has no power over the *res*.

We disagree, first and foremost, because accepting Mr. Garcia's argument would require us to deviate from the Rule 12(b)(6) standard by rejecting the Government's factual allegations and drawing inferences in the *moving* party's favor. Additionally, Mr. Garcia's argument relies on factual disputes engineered by his introduction of extraneous exhibits (which, as discussed above, do not merit our consideration at this stage). Otherwise, the Complaint plausibly alleges that the DEA agents—and the DEA agents *alone*—ultimately decided to seize the Currency, and only they took full possession of the Currency. The Government avers as follows:

> As there was probable cause to seize [ ] Defendant Currency for violations of federal and state-controlled substance laws, [ ] Defendant Currency was seized and taken into custody. SA Collins also seized three of [Mr.] Garcia's cellphones. SA Collins and TFO Melton transported [ ] Defendant Currency and the cellphones to DEA Indianapolis District Office.

Compl. ¶ 16, dkt. 1.

Mr. Garcia apparently reads ambiguity into the Government's use of passive voice: *i.e.*, that the "Currency was seized and taken into custody." Whatever confusion such

11

syntactical discretion has caused Mr. Garcia, the next sentences clarify that SA Collins and TFO Melton took possession of the Currency and placed it in the DEA's custody. Read in context, therefore, the Complaint provides sufficient facts such that we can safely resolve any purported ambiguity in the Government's favor at this preliminary juncture. *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) (stating that "ambiguities in complaints in federal court should be interpreted in favor of plaintiffs").

In maintaining that a turnover order is a prerequisite to federal jurisdiction, Mr. Garcia relies on *United States v. One 1979 Chevrolet C-20 Van*, 924 F.2d 120 (7th Cir. 1991), *superseded by statute*, 720 Ill. Comp. Stat. 570/505(d) (2003) (amended statute allows either state court or state attorney to authorize transfer of seized property). There, state police officers arrested the claimant for driving under the influence, seized her van, and, four days later, relinquished custody of the van to the Federal Bureau of Investigations ("FBI") for federal forfeiture. *Id.* at 121. After the FBI initiated administrative forfeiture proceedings, the claimant indicated her intent to contest the forfeiture, so the FBI referred the matter to the United States Attorney's Office for judicial proceedings. *Id.* Before the federal government filed a forfeiture complaint in federal court, the state of Illinois filed a complaint in state court for the van's forfeiture. Ultimately, the state court action was voluntarily dismissed, after which the federal district court issued a decree ordering forfeiture of the claimant's van. *Id.*

The claimant appealed, arguing that, absent a state turnover order, the federal court lacked jurisdiction over the *res*, and the Seventh Circuit agreed, reasoning that the state court had exercised jurisdiction over the van to the exclusion of the federal court. *Id.* at

12

121–22. Though the state court had dismissed the forfeiture action, it had never relinquished control of the van. *Id.* at 123. Most concerning to the Seventh Circuit was the lack of "authority for the type of transfer between . . . agencies that took place." *Id.* at 122. Rather, because state officials had "taken" and "detained" the claimant's van, Illinois law automatically vested jurisdiction in state court and specified that transferring seized property to federal authorities required a turnover order from state court. *Id.* (quoting Ill.Rev.Stat.1971, ch. 56½, § 712(d)). Therefore, as the court explained, "[a] local police department may not take seized property and just pass it on as it pleases to the FBI in flagrant disregard of state laws mandating judicial authority over such turnovers." *Id.*

Based on *C-20 Van*, Mr. Garcia contends here that "state and local law enforcement agencies do not have the power to routinely transfer seized property without first seeking authorization pursuant to state law." Mot. Dismiss 5, dkt. 10. Though Illinois has since amended its forfeiture statutes, *see One 1987 Mercedes Benz*, 2 F.3d 241, 242 n.3 (7th Cir. 1993) (discussing amendments), the Seventh Circuit's underlying concern regarding law enforcement's compliance with state forfeiture statutes remains.

Under Indiana law, seized property remains in the custody of the seizing agency. I.C. § 34-24-1-2(l). Therefore, if the Indiana state police had, as Mr. Garcia insists, "seized" the Currency, a state turnover order would have been a prerequisite to federal jurisdiction. But because the Complaint has plausibly alleged that the DEA agents, not the state police, decided to (and did) seize the Currency, jurisdiction never vested in state court, thereby obviating any need for a turnover order.

Mr. Garcia also invokes *United States v. $42,467.00 United States Currency*, a 2008 case where the government voluntarily dismissed its forfeiture complaint because it never obtained a turnover order from state court. No. 1:08-cv-01472-DFH-DML, dkt. 10 (S.D. Ind. Dec. 19, 2008) (order of dismissal). Based on the government's motion to dismiss in that case, dkt. 15-2, Mr. Garcia contends that the Government has previously "admitted" that the lack of a turnover order deprives a federal court of jurisdiction. Notwithstanding the fact that Mr. Garcia raises this argument for the first time in his reply brief, we find it unpersuasive. *Gre-Ter Enterprises, Inc. v. Mgmt. Recruiters Int'l, Inc.*, 329 F. Supp. 3d 667, 684 (S.D. Ind. 2018) (stating that "new arguments may not be raised in reply"). In *$42,467.00 United States Currency*, the government had actually alleged that Indianapolis police officers—not federal law enforcement officers—seized the defendant currency. As we have explicated above, the Government here alleges that the DEA agents seized the Currency, meaning that the state turnover statute was never triggered.

In sum, because the Government has plausibly alleged that federal law enforcement agents seized the Currency, we hold that we can and should retain full and exclusive jurisdiction over the Currency.

## II.    The Government's Pleading Burden

To be entitled to forfeit seized property, the Government must demonstrate a connection between the Currency and illegal drug transactions. The parties, however, disagree as to the Government's burden at the pleading stage and whether the Government has in fact satisfied the relevant burden.

Under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the government must prove by a preponderance of the evidence that the defendant property is subject to forfeiture. *United States v. $42,600.00 in United States Currency*, 409 F. Supp. 3d 671, 674 (S.D. Ind. 2019) (citing 18 U.S.C. § 983(c)(1)). To satisfy this burden at trial, the Government must establish a "substantial connection" between the seized property and a criminal offense, as demonstrated by evidence collected both before and after filing the forfeiture complaint. *United States v. $24,000.00 in United States Currency*, No. 3:21-cv-1073-NJR, 2022 WL 1692444, at *3 (S.D. Ill. May 26, 2022) (citing 18 U.S.C. § 983(c)).

Before CAFRA, federal law required the government to show that probable cause existed at the time of filing. 19 U.S.C. § 1615. Then, the burden shifted to the claimant to prove by a preponderance of the evidence that the property was not subject to forfeiture. If the claimant failed, the government's probable cause showing alone could support a judgment of forfeiture. *United States v. $506,231 in U.S. Currency*, 125 F.3d 443, 451 (7th Cir. 1997). Under CAFRA, the claimant no longer bears the burden of proof at trial; instead, only the government must establish by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1).

Disputed here is whether CAFRA eliminated or, instead, merely added to the government's pre-CAFRA burden of demonstrating it had probable cause to believe that the seized property was connected to a criminal offense. Relying on Ninth Circuit precedent, Mr. Garcia argues that CAFRA did not obviate the probable cause requirement, meaning that the Government must still meet the probable cause standard to institute a civil forfeiture action. Mot. Dismiss 11, dkt. 10 (citing *United States v. $493,850 in U.S. Currency*,

518 F.3d 1159, 1167 (9th Cir. 2008) (concluding that CAFRA did not affect section 1615's requirement that the government to show probable cause when it files a forfeiture action)).

The Government points to *$42,600.00 in United States Currency*, wherein our Court analyzed this precise issue and, after reviewing procedural rules, statutory law, and legal precedent, held "that CAFRA repealed by implication § 1615's probable cause requirement for civil-forfeiture complaints," meaning that, at the pleading stage, the government need only "allege facts that support a reasonable belief that there was substantial connection between the Currency and a criminal offense." 409 F. Supp. 3d at 676. Though the Seventh Circuit has not yet addressed this issue, both the First and Second Circuits have expressly held that CAFRA "statutorily superseded" the pre-CAFRA probable cause requirement. *Id.* (citing *United States v. Lopez-Burgos*, 435 F.3d 1, 2 (1st Cir. 2006); *United States v. $557,933.89, More or Less, in United States Funds*, 287 F.3d 66, 77 (2d Cir. 2002)). We share the view that this interpretation more closely comports with Supplemental Rule G(2), which mandates civil forfeiture complaints to "state sufficiently detailed facts to support a *reasonable belief* that the Government will be able to meet its burden of proof at trial." *Id.* at 674–76 (quoting Fed. R. Civ. P. Supp. R. G(2)(f)) (emphasis added).

Returning to the case at bar, the Government must aver facts sufficient to support a reasonable belief that the Currency is substantially connected to a criminal offense, here a violation of the Controlled Substance Act, 21 U.S.C. § 801 *et seq.*, which provides in relevant part that all money furnished or intended to be furnished by a person in exchange for a controlled substance, and all proceeds traceable to such an exchange, are subject to forfeiture to the United States. 21 U.S.C. § 881(a)(6). Because the property owner's culpability

has no bearing on the property's forfeitability, the Government may seize cash it believes is traceable to drug trafficking without an antecedent criminal prosecution underway. *See id.*; 18 U.S.C. § 983(a)(3)(B). In considering whether the Government has met its pleading burden, we examine the totality of the circumstances. *United States v. Funds in the Amt. of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 455 (7th Cir. 2005) (recognizing positive alert from narcotic detection canine plus suspicious explanation about the source of funds constituted probative evidence of connection between currency and drug trafficking).

Accepting the factual allegations as true, we find that the Complaint contains facts sufficient to support a reasonable belief that the Currency was (or was intended to be) furnished by a person in exchange for a controlled substance or proceeds traceable to such an exchange. According to the Complaint, Trooper Buchta observed signs of Mr. Garcia's nervousness in the form of his noticeable shakiness and an inability to maintain eye contact. *See Illinois v. Wardlow*, 528 U.S. 119, 120 (2000). Further conferring grounds for suspicion, Mr. Garcia disclosed an illogical travel route, complicated by his announced intention to fly back to Texas "the following day," despite having purchased no plane ticket. Compl. ¶ 8, dkt. 1; *see also $24,000.00 in United States Currency*, 2022 WL 1692444, at *3 (finding that visible nervousness and illogical route contributed to officers' reasonable suspicion).

Next is the fact that K-9 Cole alerted to the odor of narcotics both outside the vehicle and on the Currency itself. The Currency—sorted by denomination in bundles marked with individual playing cards and held inside three heat-sealed packages—resembled "some

system for tracking proceeds" as frequently used by drug trafficking organizations. Compl. ¶ 12, dkt. 1. Mr. Garcia also revealed his unemployed status, without offering any explanation for his possession of the large sum of cash.

Finally, SA Collins discovered that Mr. Garcia had three different cell phones and that discrepancies existed between Mr. Garcia's GPS destination and his family's alleged location. Based on his law enforcement training and experience, SA Collins knew that drug traffickers routinely use multiple cell phones to coordinate their illegal activities in an effort to thwart law enforcement scrutiny. *United States v. Walton*, 827 F.3d 682, 687 (7th Cir. 2016) ("Officers may rely on their experience to make inferences from and deductions about the cumulative information available.") (internal quotation omitted). These allegations, taken together and considered as a whole, support a reasonable inference that the Currency shared a substantial connection to drug trafficking.

It may be true, as Mr. Garcia argues, that "many of these factors, taken alone, would not be enough to carry the [G]overnment's burden for forfeiture"; nevertheless, at this juncture, we must "consider the totality of the evidence as a whole and in the appropriate context." *Funds in the Amt. of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d at 469. We thus conclude that the multitude of factors taken in the aggregate, as detailed above, sufficiently establish a reasonable belief that the Currency shared a substantial connection to illegal drug activity.

## CONCLUSION

For these reasons, Mr. Garcia's Motion to Dismiss, dkt. 10, is **DENIED**.

IT IS SO ORDERED.

Date:
_____5/1/2024_____

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Traci Marie Cosby
DOJ-USAO
Traci.Cosby@usdoj.gov

Stephen G. Gray
ATTORNEY AT LAW
misstuffy@aol.com