UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$299,745.00 IN UNITED STATES CURRENCY,<br><br>Defendant. | ) | No. 1:23-cv-01584-SEB-MKK |
| JOSE MANUEL GARCIA, JR.,<br><br>Claimant. | ) | |

**OMNIBUS ORDER DENYING CLAIMANT'S MOTION TO SUPPRESS AND MOTION FOR SUMMARY JUDGMENT**

Plaintiff United States of America (the "Government") initiated this action, seeking forfeiture of Defendant $299,745.00 in United States Currency (the "Currency"). Before the Court is Claimant Jose Manuel Garcia, Jr.'s ("Mr. Garcia") Motion to Suppress. Dkt. 54. Also before the Court is Mr. Garcia's Motion for Summary Judgment. Dkt 58.[1] The Government has responded to both motions, and Mr. Garcia has filed his reply briefs.

**DISCUSSION**

**I. Mr. Garcia's Motion to Suppress**

Mr. Garcia seeks to have suppressed any statements/seizures of evidence that were the result of the excessive length of interrogation at the scene of the traffic stop, arguing that Trooper

[1] The Government's Motion for Summary Judgment remains pending and shall be undertaken and resolved in due course. Dkt. 64.

Buchta's initial questioning "went well beyond general 'travel plans' " and "a total of 17 minutes elapsed from the time the traffic stop started until the canine began its search of Garcia's vehicle." Dkt. 54 at 10. The Government rejoins that Trooper Buchta developed reasonable suspicion to request a narcotics canine at the scene and the traffic stop was not reasonably delayed as a result. Dkt. 66 at 13.

The Fourth Amendment to the United States Constitution "prohibits unreasonable searches and seizures." *United States v. Taylor*, 596 F.3d 373, 376 (7th Cir. 2010). "Traffic stops are seizures, so they must be reasonable under the circumstances" in order to comport with the Fourth Amendment. *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021). A reasonable traffic stop is "justified at its inception, and reasonably related in scope to the circumstances which justified the interference in the first place.' " *Id.* (quoting *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cnty.*, 542 U.S. 177, 185 (2004)). Ordinary inquiries incident to a permissible traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).

The Supreme Court has held that "the use of a well-trained narcotics-detection dog—one that 'does not expose noncontraband items that otherwise would remain hidden from public view'—during a lawful traffic stop, generally does not implicate legitimate privacy interests." *Illinois v. Caballes*, 543 U.S. 405 (2005) (internal citation omitted). That said, canine sniffs "may not be fairly characterized as part of the officer's traffic mission, and so dog sniffs may not prolong or add time to the stop unless supported separately be individualized, reasonable suspicion." *United States v. Stewart*, 902 F.3d 664, 672 (7th Cir. 2018) (citing *Rodriguez*, 575 U.S. at 356–58).

Here, Mr. Garcia contends that Trp. Buchta unreasonably prolonged the traffic stop in order to facilitate an unlawful canine sniff. Contrary to Mr. Garcia's arguments, however, the uncontroverted facts relating to the traffic stop reveal that it occurred based on a reasonable suspicion of a traffic violation ("following too closely"). Mr. Garcia's interaction with Trp. Buchta entailed an initial two-minute conversation about the reasons for Mr. Garcia's travel to Indiana, after which Trp. Buchta returned to his vehicle to run checks on Mr. Garcia's license and registration and called for Indiana State Trooper Christopher Waltz ("Trp. Waltz") and his certified narcotics canine K-9 Cole to arrive at the scene. Approximately eight minutes into the traffic stop, Trp. Buchta discovered information about Mr. Garcia's criminal history, which prompted a second conversation between Trp. Buchta and Mr. Garcia. It was during this second conversation that K-9 Cole performed an open-air sniff of Mr. Garcia's truck and returned a positive alert to the odor of narcotics, supporting the finding of probable cause to search the truck. *See United States v. Williams*, 627 F.3d 247, 251 (7th Cir. 2010) ("One . . . exception to the warrant requirement is the automobile exception, which allows law enforcement to conduct a warrantless search of a vehicle if there is probable cause to believe the vehicle contains contraband or evidence of a crime.").

We hold that Trp. Buchta had probable cause to search the GMC rental truck being driven by Mr. Garcia, that based on his training and experience as a drug interdiction officer he developed reasonable suspicions to believe Mr. Garcia was involved in criminal activity. In addition, the drug canine gave a positive alert to the presence of narcotic odors on the driver's side door. Under these circumstances, the Court concludes that reasonable suspicion of drug activity was underway at the time of the traffic stop and no Fourth Amendment violation(s) occurred. Claimant's Motion to Suppress shall be **DENIED** accordingly.

## II. Mr. Garcia's Motion for Summary Judgment

### A. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because summary judgment requires "no *genuine* issue of *material* fact," "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247−48 (1986) (emphasis in original). Material facts are those that "might affect the outcome of the suit," and a dispute of material fact is genuine when "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

### B. The Instant Summary Judgment Motion

Mr. Garcia moves for summary judgment on the grounds that Trp. Buchta "seized" the Currency and "handed" it over to federal authorities (namely, DEA Special Agent Erik Collins ("SA Collins")) without obtaining a state turnover order, in violation of Indiana law. The absence of a state turnover order, Mr. Garcia's theory continues, deprives this court of *in rem* jurisdiction.

Mr. Garcia's argument is based on his reading Indiana Code §§ 35-33-5-5 and 34-24-1, which outline the requirements for seizing property and instigating forfeiture proceedings. Initially, seized property "is considered to be in the custody of the law enforcement agency making the seizure." I.C. § 34-24-1-2(l). "All items of property seized by any law enforcement agency as a result of a . . . warrantless search[ ] shall be securely held by the law enforcement agency under the order of the court trying the cause." *Id.* § 35-33-5-5(a). Thereafter, "[u]pon motion of the prosecuting attorney, the court shall order property seized . . . transferred . . . to the appropriate federal authority for disposition" under federal law. *Id.* § 35-33-5-5(k).

In other words, once *in rem* jurisdiction has vested in state court, there can be no federal *in rem* jurisdiction unless and until the state court has issued a turnover order sanctioning federal authorities' adoption of the seizure. *Martin v. Indiana State Police*, 537 F. Supp. 2d 974, 987 (S.D. Ind. 2008). "Without a turnover order, 'there [is] no valid transfer of jurisdiction from the state court' " to federal court, thereby depriving the federal court of authority over any forfeiture proceedings. *United States v. $99,000 U.S. Currency*, No. 1:10-cv-138-SEB-DKL, 2011 WL 2470665, at *3 (S.D. Ind. June 17, 2011) (alterations in original) (quoting *Martin*, 537 F. Supp. 2d at 987).

In moving for summary judgment suggesting there are no material facts in controversy, Mr. Garcia has asserted as fact the following: that "after the seizure of Garcia's currency by the state trooper, Trooper Adam Buchta contacted DEA agents to come to the traffic stop and handed the currency over to the agents without a state turnover order in violation of Indiana law." Dkt. 59 at 1–2. This "fact" is specifically contradicted by the Government in its response to Claimant's Motion (and in support of its own Motion for Summary Judgment). Dkt. 66 at 12 ("The United States disputes that a turnover order by the State of Indiana was required for the seized currency in this case . . . . The United States also disputes that SA Collins 'took control of the money from Buchta' as asserted [by Mr. Garcia]."). Indeed, SA Collins's specific role in the traffic stop and the encounter with Mr. Garcia and in supervising the investigation at the scene including and after his seizure of the Currency is central to the dispute between the parties. Mr. Garcia's Motion for Summary Judgment is therefore **DENIED**.

## CONCLUSION

For the reasons stated above, Mr. Garcia's Motion to Suppress is hereby **DENIED**. Dkt. 54. Additionally, Mr. Garcia's Motion for Summary Judgment is **DENIED**. Dkt. 58.

IT IS SO ORDERED.

Date: 9/30/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Traci Marie Cosby
DOJ-USAO
Traci.Cosby@usdoj.gov

Stephen G. Gray
ATTORNEY AT LAW
misstuffy@aol.com

Kelly Rota
DOJ-USAO
kelly.rota@usdoj.gov